SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAR 0 1 2023
ARTHUR JOHNSTON
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**RICKY LUKE AND DIANNE LUKE**                                                            **PLAINTIFFS**

**Vs**                                                           **CIVIL ACTION NO.** 3:23cv152 HTW-LGI

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**STATE FARM FIRE AND CASUALTY COMPANY,**
**and JOHN AND JANE DOES PERSONS and ENTITIES 1-10**           **DEFENDANTS**

## COMPLAINT

### (JURY TRIAL REQUESTED)

Plaintiffs Ricky and Dianne Luke, by and through undersigned counsel, file this Civil Action to recover damages against Defendants State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company and John And Jane Does Persons and Entities 1 through 10, and in support thereof, state as follows:

### I. PARTIES

1. Plaintiffs, Ricky Luke and Dianne Luke are resident adult citizens of the Madison County, Mississippi, residing at 241 Brisage Blvd., Madison, Mississippi.

2. Defendant State Farm Mutual Automobile Insurance Company (hereinafter referred to as "State Farm") is a foreign business corporation, with its principal place of business in Illinois, licensed to do (and in fact doing) business in the State of Mississippi and may be served with process by service through the Mississippi Department of Insurance.

3. Defendant State Farm Fire and Casualty Company (hereinafter referred to as "State Farm Fire") is an insurance company organized under the laws of the Illinois. State Farm Fire is licensed to do (and is in fact doing) insurance business in Mississippi. State Farm Fire may be served with process by service through the Mississippi Department of Insurance.

4. Defendants John and Jane Does Persons and Entities 1 through 10 are adjusters, and/or representatives of Defendants, State Farm and State Farm Fire that were involved in/responsible for

1

adjusting Plaintiffs' claims that gave rise to this litigation and/or making the decisions regarding the handling of this claim, the conduct of whom/which subjects them to individual liability under the laws of the State of Mississippi; and/or are "alter egos" of Defendants and/or are corporations, individuals, insurance companies, or other entities that caused or contributed to Plaintiffs' damages as set-forth herein.

## II. VENUE AND JURISDICTION

5. Plaintiffs incorporate by reference the preceding paragraphs.

6. This Court has jurisdiction under § 1332 in that the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states. Venue in this matter is proper under 28 U.S.C. § 1391, as a substantial part of the events or omissions as alleged infra and giving rise to these claims occurred in the Northern Division of the Southern District of Mississippi.

## III. UNDERLYING FACTS

7. Plaintiffs incorporate by reference the preceding paragraphs.

8. Plaintiffs purchased and moved into their home located at 241 Brisage Blvd., Madison, Mississippi (hereinafter "Residence") in December 2013.

9. Plaintiffs obtained homeowner's insurance on the Residence from Defendants, and at all material times were insureds under a policy of homeowners insurance solicited, underwritten, sold, issued, and/or administered by Defendants (hereinafter "Policy"). Defendants are in possession, custody and/or control of the Policy, believed to be Policy Number 23-BG-T008-7. However, despite Plaintiffs' requests, Defendants have refused to provide Plaintiffs with a copy of the Policy, certified or otherwise.

10. The Policy constitutes a valid and binding contract. Plaintiffs paid all premiums due and performed and satisfied all conditions/requirements/conditions precedent under the Policy.

11. On or about March 4, 2020, the Residence was struck by a hailstorm, causing damage to the roof. On or about September 21, 2020, Plaintiffs contacted State Farm Claims and filed a claim with Defendants for storm damage.

12. On September 24, 2020, State Farm's representative arrived to inspect the roof. Before he

began his inspection, he stated to Mrs. Luke that he knew other insurers were paying claims in the subdivision, but that State Farm was not and that he had already completed his paperwork denying the claim before he exited his vehicle.

13. Immediately following his inspection, the representative purported to show Mrs. Luke pictures of the roof, explaining that the roof did not show any indications of hail damages, notably pock marks and damage to soft metals.

14. On October 8, 2020, State Farm Fire denied the claim, stating "our inspection did not reveal any accidental direct physical loss to you home."

15. In December 2020, an independent contractor inspected the roof for the Lukes. Following his examination, he provided photographs of the roof to the Lukes which, even to the untrained eye, showed both damage to soft metals and pocking.

16. The Lukes submitted these photographs in support of their request for a reinspection.

17. On January 15, 2021, State Farm Fire's hired engineering firm, U.S. Forensic, reinspected the Lukes' roof. The engineer's February 1, 2021 report both acknowledged a hail event on March 4, 2020 and noted damage to the roof consistent with that found by the roofing contractor. The report went on to make a legal conclusion that the roof had not sustained "functional damage."

18. On February 3, 2021, State Farm Fire's Claim Specialist Aswad Harris sent a denial letter in which, he misrepresented the engineer's report by stating, "No evidence of hail damage or wind damage was identified during the inspection. Damage was identified to your roof consisting of wear, tear and deterioration."

19. On February 12, 2021, the Lukes cancelled their State Farm homeowner's policy as well as their State Farm auto policies.

20. Plaintiffs made a proper and timely claim under the Policy, but Defendants, acting in bad faith, denied the Plaintiffs' claims.

## **IV. CAUSES OF ACTION**

21. Plaintiffs incorporate by reference the preceding paragraphs.

22. Although Plaintiffs made a proper and timely demand for benefits due and owing under the subject Policy of insurance, Defendants wrongfully, negligently, grossly negligently, intentionally and/or willfully refused, and continue to this day to refuse, to pay benefits due the Plaintiffs under the terms of the Policy of insurance.

23. Defendants conducted themselves in a bad faith and tortious manner and committed a breach of their obligations under the subject Policy of insurance, which conduct resulted in a wrongful denial of insurance benefits to Plaintiffs under the subject Policy of insurance.

24. Defendants have an express and/or implied duty to treat the Plaintiffs with good faith and fair dealing, and Defendants breached this duty.

25. Defendants' conduct is contrary to the terms and conditions of the subject Policy of insurance and established law. Defendants are liable to Plaintiffs for the following conduct:

    a. Negligent, grossly negligent, intentional, malicious and/or reckless failure to adequately, timely and properly investigate and adjust Plaintiffs' claims;

    b. Negligently, grossly negligently, intentionally, maliciously and/or recklessly attempting to subjectively construe the terms and conditions of the subject Policy of insurance in a manner contrary to the terms and conditions of the Policy, without making any determination with any degree of certainty about the damages caused to Plaintiffs' property and the cause thereof, and acting to protect their own financial interests at the expense of Plaintiffs;

    c. Negligently, grossly negligently, intentionally, maliciously and/or recklessly failing to construe ambiguities in Policy language in favor of Plaintiffs;

    d. Negligent, grossly negligent, intentional, malicious and/or reckless failure to pay Plaintiffs benefits due at a time when Defendants knew Plaintiffs were entitled to benefits under the subject insurance Policy;

    e. Negligent, grossly negligent, intentional, malicious and/or reckless failure to provide

4

Plaintiffs any reasonable or justifiable basis for failing to honor the Plaintiffs' claims for benefits in relation to the insurance Policy, the facts and applicable law;

 f. Negligently, grossly negligently, intentionally, maliciously and/or recklessly acting in contravention of established Mississippi law;

 g. Negligently, grossly negligently, intentionally, maliciously and/or recklessly materially misrepresenting the contents, terms, conditions and benefits of the subject Policy of insurance;

 h. Negligently, grossly negligently, intentionally, maliciously and/or recklessly materially misrepresenting the cause of Plaintiffs' loss, and/or ignoring causative factors covered under the subject Policy of insurance;

 i. Negligently, grossly negligently, intentionally, maliciously and/or recklessly converting monies rightfully belonging to Plaintiffs to their own use;

 j. Negligently, grossly negligently, intentionally, maliciously and/or recklessly sending adjuster(s) with inadequate training, experience or competency to inspect the damages to Plaintiffs' Residence;

 k. Negligently, grossly negligently, intentionally, maliciously and/or recklessly depriving Plaintiffs peaceful use and occupancy of their Residence;

 l. Negligently, grossly negligently, intentionally, maliciously and/or recklessly devaluing Plaintiffs' Residence;

 m. Negligently, grossly negligently, intentionally, maliciously and/or recklessly failing to ensure Plaintiffs' losses were adjusted in a consistent and non-arbitrary manner;

 n. Negligently, grossly negligently, intentionally, maliciously and/or recklessly failing to restore Plaintiffs' Residence to its pre-loss condition by refusing to pay for necessary repairs and/or replacements to Plaintiffs' Residence in accordance with the terms of Defendants' contract of insurance and the Policy, and by failing to provide all such other benefits to which Plaintiffs are entitled under the subject Policy of insurance;

 o. Negligently, grossly negligently, intentionally, maliciously and/or recklessly

withholding payments from Plaintiffs when they knew or should have known that Plaintiffs' claims for the restoration of their Residence and all other foreseeable and related losses were caused by covered perils and were valid under the Policy;

  p. Negligently, grossly negligently, intentionally, maliciously and/or recklessly denying Plaintiffs' covered claims without a legitimate or arguable reason;

  q. Negligently, grossly negligently, recklessly and/or willfully and maliciously compelling Plaintiffs to engage legal counsel to initiate litigation to recover their contractual benefits;

  r. Negligently, grossly negligently, recklessly and/or willfully and maliciously delaying payment of Plaintiffs' claims in a fashion calculated to cause Plaintiffs' substantial inconvenience, distress and anguish;

  s. Negligently, grossly negligently, recklessly and/or willfully and maliciously delaying payment of Plaintiffs' claims, and refusing to pay Plaintiffs' claims, resulting in the advancement of damage throughout Plaintiffs' roof and causing Plaintiffs to suffer adverse consequences to their Residence value;

  t. Negligently, grossly negligently, recklessly and/or willfully and maliciously seeking to identify grounds on which to deny Plaintiffs' claims, while ignoring the obvious causative link between Plaintiffs' losses and covered perils;

  u. Acting in conscious, gross and/or reckless disregard for the rights of the Plaintiffs;

  v. Negligently, grossly negligently, recklessly and/or willfully and maliciously failing and/or refusing to provide Plaintiffs with a copy of the Policy upon request; and

  w. Other acts to be shown at the trial of this matter.

26. Plaintiffs satisfied all their obligations under the subject policy of insurance and took all possible steps, within their means, to mitigate their damages and performed and satisfied all conditions/requirements/conditions precedent under the Policy.

27. Defendants accepted insurance premiums from Plaintiffs from the inception of coverage under the subject Policy of insurance through December 2021. The monies paid by the Plaintiffs as premiums for the subject Policy of insurance were meant to secure homeowners' insurance coverage in accordance with

the terms and conditions of the subject Policy of insurance and the representations of Defendant's agents. Although Defendants and their agents knew this was the intention of the Plaintiffs in paying premiums for the subject Policy, Defendants converted the Plaintiffs' property, in the form of insurance premiums / commissions, over to their own use, and did not procure and/or provide coverage in the manner represented to the Plaintiffs.

28. Additionally, by virtue of Plaintiffs' claims on the subject Policy, Defendants became liable to Plaintiffs to pay them a sum of money sufficient to repair and/or replace the damaged portions of Plaintiffs' Residence. Defendants converted said sums of money over to Defendants' own use, however, and prevented Plaintiffs from enjoying the use and value of said monies, while forcing Plaintiffs to live with a damaged Residence.

29. By holding and using premium payments made by Plaintiffs, while not procuring and/or providing the coverage represented to Plaintiffs; and by holding the sums of money necessary to repair and/or replace the damaged portions of Plaintiffs' Residence subsequent to the Plaintiffs' claims, Defendants assumed unlawful dominion over the personal property (in the form of money) of Plaintiffs, in defiance and/or exclusion of Plaintiffs' rights, and withheld possession from Plaintiffs under a claim of right or title inconsistent with that of Plaintiffs, and contrary to the Plaintiffs' rights, the terms and conditions of the subject Policy of insurance, and applicable law.

30. As a result of these acts, as more fully set forth below, the Defendants are liable to Plaintiffs for the torts of breach of contract, breach of duties of good faith and fair dealing, conversion, constructive trust, and insurance bad faith, and have damaged Plaintiffs in an amount to be proven at trial for actual, economic and compensatory damages, in addition to attorney fees and punitive and extra contractual damages.

## V. BREACH OF CONTRACT

31. Plaintiffs incorporate and reassert the allegations of preceding paragraphs.

32. The Contract/Policy between Defendants and Plaintiffs was valid and binding and called for Defendants to act according to the terms and conditions of the subject Policy of insurance and established

7

law. As set forth herein, Defendants breached the express and implied terms of (and otherwise acted in a manner inconsistent with/as to frustrate the purpose of the Contract/Policy and the justified expectations of Plaintiffs); and Plaintiffs have been damaged monetarily as a result.

33. As a result of these breaches, Plaintiffs seek and are entitled to all damages allowed under Mississippi law.

### VI. BREACH OF DUTIES OF GOOD FAITH AND FAIR DEALING

34. Plaintiffs incorporate and reassert the allegations of the preceding paragraphs.

35. At all times pertinent to the allegations of the Complaint, Defendants acted in a manner as to hinder or prevent performance (and failed to take the necessary affirmative steps to cooperate in achieving the goals) of the Contract/Policy and were not faithful to the Contract's/Policy's agreed purpose and the justified expectations of Plaintiffs. All of this conduct violates the standards of decency, fairness and reasonableness such that Defendants have breached the duties of good faith and fair dealing.

36. As a result of these breaches, Plaintiffs seek and are entitled to all damages allowed under Mississippi law.

### VII. CONVERSION

37. Plaintiffs incorporate and reassert the allegations of preceding paragraphs.

38. Despite demands from Plaintiffs, Defendants have wrongfully/without authorization (and in exclusion and defiance of/inconsistent with Plaintiffs' rights) acted with the intent to possess/exercise dominion over amounts owed to/owned by Plaintiffs and converted those monies to/for their own purposes/uses.

39. As a result, Plaintiffs seek and are entitled to all damages allowed under Mississippi law for conversion.

### VIII. CONSTRUCTIVE TRUST

40. Plaintiffs incorporate and reassert the allegations of preceding paragraphs.

41. By fraud, duress or abuse of confidence; commission of wrong; and by other unconscionable conduct, artifice, concealment and questionable means and/or against equity and good conscience (as set-

forth herein), Defendants have obtained or retain the legal control to monies which they ought not, in equity and good conscience, hold and enjoy. To the contrary, Plaintiffs should hold and enjoy the rights to/control of these monies, such that a constructive trust should be imposed.

42. As a result, a constructive trust should be imposed over said monies in an amount to be proven at trial and Plaintiffs seek and should be awarded all rights, remedies and damages available under Mississippi law.

## IX. INSURANCE BAD FAITH

43. Plaintiffs incorporate and reassert the allegations of preceding paragraphs.

44. Defendants have exhibited reprehensible conduct and bad faith in the handling of Plaintiffs' insurance claim and failing to provide Plaintiffs with a copy of the Policy upon request.

45. As a result, Plaintiffs seek and are entitled to all damages allowed under Mississippi law for bad faith. To the extent Defendants' conduct does not rise to the level of bad faith, Plaintiffs are entitled to and seek <u>Veasley</u> damages.

## X. DAMAGES

46. Plaintiffs incorporate by reference the preceding paragraphs.

47. As a direct and proximate result of Defendants, and each of their actions and conduct, including the Defendants' failure and refusal to honor their contractual and/or implied obligations to Plaintiffs, Plaintiffs have suffered substantial actual, economic and compensatory damages, including but not limited to benefits withheld; economic losses, such as attorney's fees incurred in bringing this action, travel and other incidental expenses; costs and expenses incurred in trying to maintain the Plaintiffs' home and mitigate the Plaintiffs' damages; inconvenience, distress and anguish; worry; fair market value of Residence belonging to the Plaintiffs wrongfully converted by the Defendants; loss of value to the Plaintiffs' Residence; and other damages to be shown at the trial of this matter, for all of which the Plaintiffs are entitled to be compensated by these Defendants, jointly and severally, in an amount to be determined by a Jury at the trial of this matter.

48. The actions of the Defendants, and each of them, as set forth in the preceding paragraphs, were

so outrageous and/or malicious as to shock the conscious of a reasonable person; proximately caused Plaintiffs to suffer, and to continue to suffer, inconvenience, worry and distress; and was conduct Defendants knew, or should have known, would cause Plaintiffs to suffer the damages complained of herein. Defendants knew, and have been put on actual notice, that their refusal to properly and fairly adjust and pay the Plaintiffs' claims resulted in Plaintiffs losing value in their Residence and causes further harm to the roof and Residence. As a result of their outrageous conduct, the Defendants, and each of them, are liable to the Plaintiffs for an amount of money sufficient to compensate them for their damages and distress, as well as punitive damages in amount sufficient to punish the Defendants for their misconduct and deter Defendants, and others similarly situated, from engaging in similar behavior in the future.

49. The conduct of the Defendants, and each of them, as referenced in the preceding paragraphs, was attended by such gross negligence, reckless disregard for the rights of the Plaintiffs, and/or malicious, intentional and/or willful misconduct, as to constitute an independent tort, making the Defendants, and each of them, liable to the Plaintiffs for punitive damages, under Mississippi Law and/or under the common law, in an amount to be determined by a Jury, but in an amount sufficient to punish the Defendants for their misconduct, and to deter these Defendants, and others similarly situated, from engaging in such acts and conduct in the future.

## XI. ALTER EGO CLAIMS

50. Plaintiffs incorporate by reference the preceding paragraphs.

51. Plaintiffs are asserting claims for compensatory and punitive damages against Defendants, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company. The letter in which State Farm, by and through its claim representative, Aswad Harris, denied the Plaintiffs' claims is on letterhead purporting to be that of "State Farm." Plaintiffs assert that the State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company operate as a single corporate entity and/or conglomeration of corporate affiliates, which is doing business in Mississippi as State Farm, and which is reaping financial benefits from said business and is set up in a manner that allows for free flow of capital, services and other assets between the separately named entities, but which is also set up in a manner

calculated to limit liability to any one of the separately named Defendants in the event of civil litigation.

52. Because of the relationship between State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, said entities are merely the "alter egos" of each other, and the corporate identity of anyone, or any one of their corporate affiliates, may not be used to limit the liability of the Defendants, or any of them, in this cause. Additionally, the net worth and financial condition of all the named State Farm entities and their affiliates must be considered cumulatively to get a true picture of the net worth of State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, and/or any one of them, and must be considered together in the event the issue of punitive damages is submitted to the Jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against Defendants jointly and severally, for actual, compensatory and punitive damages, in an amount to be determined by a Jury in this cause, together with pre-judgment and post-judgment interest in the amount of 8% and/or a reasonable amount to be fixed by the Court; attorneys' fees and costs and expenses of this action; and any and all additional relief in favor of the Plaintiffs deemed appropriate by this Honorable Court.

RESPECTFULLY SUBMITTED this the 1st day of March, 2023.

PLAINTIFFS

/s/ ROBERT B. OGLETREE, ESQ.
Robert B. Ogletree, Esq. (MSB #10427)

Derek L. Hall (MSB#10194)
Robert B. Ogletree (MSB#10427)
Derek L. Hall, PLLC
370 Towne Center Boulevard
Ridgeland, MS 39157
Telephone (601) 202-2222
Facsimile (601) 981-4717
Derek@dlhattorneys.com
Robert@dlhattoneys.com
*Attorneys for the Plaintiffs*